RICCORD, Respondent
v.
JOHN BURNS MEMORIAL HOSPITAL et al., Appellants

(141 N.W.2d 160)

(File No. 10245. Opinion filed March 29, 1966)

**Kirby, McDonnell & Kirby,** Sioux Falls, for defendants and appellants.

**Clark & Hill,** Belle Fourche, for claimant and respondent.

HANSON, Judge.

Claimant, Ethel Riccord, was employed as a nurses aid by the John Burns Memorial Hospital at Belle Fourche. She claims permanent injury to her back resulting from a backward fall against a bed while helping lift a paralyzed patient. She was paid temporary total disability from the time of the accident, December 21, 1962, to March 12, 1963, when the insurer termin-

ated payments. The Industrial Commissioner found defendants liable for all of claimant's medical and· hospital costs during the period of temporary disability, but denied an award for permanent disability. The award of the Industrial Commissioner was reversed on appeal to circuit court and remanded with instructions to award temporary total disability to the date of the hearing in circuit court, March 26, 1964, and to hold a further hearing as to claimant's disability subsequent to such date. The employer and insurer appeal.

Claimant was 58 years old. She had a medical history of several major abdominal operations and an arthritic condition of long standing. When the accident happened she experienced pain, but completed her shift at the hospital. The next day she consulted Dr. John H. Davis and complained about pain in her back with pain running down her right leg to her ankle. Her right hip was bruised. Dr. Davis ordered x-rays taken and claimant was hospitalized. She remained in the hospital for three weeks and has been under the care of Dr. Davis since her injury. According to claimant she has been unable to work at the hospital or do housework because of constant pain in her back and legs. The pain is so severe at times she becomes upset and cannot keep food down. Her testimony is supported by her husband and three neighbors all of whom testified she was a willing and good worker before the accident and seldom complained about her arthritic condition, but since the accident she has complained bitterly of constant pain, is often bedfast, and is not able to work.

Dr. Davis has been Mrs. Riccord's regular doctor for several years. On August 8, 1962 he examined and treated her for backache and pain in her legs and ankles. He diagnosed her trouble then as osteoarthritis of the spine. In his report of injury following the accident he described her injury as a sprained back without permanent disability. At the trial Dr. Davis testified Mrs. Riccord had an arthritic condition of long standing with fusion of the arthritic structures. He explained an arthritic fusion or ankylosis to be a common result in cases of prolonged arthritis. A joint and the ligaments surrounding it lose their elasticity and no longer perform their function. As a result the joint

becomes immobile and relatively free from arthritic pain. He was of the opinion the accident broke the fused joints and was the cause of Mrs. Riccord's present pain. Mrs. Riccord would eventually improve, but her pain would continue until fusion of the joints recurred. He also found Mrs. Riccord had an emotional problem and was of the opinion that she was unable to work. Dr. Davis didn't think an x-ray would show a breakup of arthritic fusions.

X-rays taken at the John Burns Memorial Hospital are all routinely read and interpreted by Dr. Elton J. Saxton and his associates of Rapid City. Dr. Saxton is a roentgenologist or radiologist. He personally read Mrs. Riccord's x-rays which were taken on December 24, 1962 and on August 23, 1963. He was called as a witness by defendants. According to his testimony there was no particular abnormality of Mrs. Riccord's dorsal spine except demineralization. There was an appearance of long-standing osteophyte or osteoarthritic lipping which could possibly be caused by minimal trauma years ago. He believed the osteophyte change was of much longer duration than one year and any problems reflected in Mrs. Riccord's x-rays had existed before the time of the accident. He further testified that arthritic fusion could be seen on an x-ray and there was no evidence of this condition shown on Mrs. Riccord's x-rays. In his opinion an accident of the nature suffered by claimant might possibly cause a flare-up of a pre-existing arthritic condition. Dr. Saxton's testimony was based upon reading Mrs. Riccord's x-rays. At no time did he see, treat, or examine her personally.

The Industrial Commissioner resolved the conflict in evidence relating to the cause of claimant's condition in favor of defendants according to the testimony of Dr. Saxton. The question is whether or not the trial court could substitute its judgment for that of the Industrial Commissioner in this regard. "Alexander Pope, in his Moral Essays, Epistle III, line 1, asks: 'Who shall decide when doctors disagree?' The answer is easy in Workmen's Compensation: The Industrial Commission." Vol. 2 Larson's Workmen's Compensation Law, p. 320 Cumulative Supp.

On appeal from an order or decision of the Industrial Commissioner the circuit court acts as an appellate or reviewing court upon the record made before the commissioner. No additional evidence may be taken or received. SDC 64.0706 and 64.0707. The hearing before the Industrial Commissioner is the trial forum where the weight and credibility of evidence is determined and conflicts resolved. The commissioner's findings of fact are virtually on a plane with verdicts of the jury and will not be disturbed on appeal if there is any reasonable and substantial evidence tending to sustain them, Wieber v. England, 52 S.D. 72, 216 N.W. 850, and findings of fact based on conflicting evidence are conclusive unless so palpably erroneous as to be unreasonable. Howe v. Farmers Cooperative Creamery of Madison, 21 S.D. 207, 132 N.W.2d 844. "Such rule is peculiarly applicable in the case of conflicting testimony of medical witnesses or conflicts as to the medical or scientific theories to be accepted by the trier of the facts." 100 C.J.S. Workmen's Compensation § 763(6), p. 1207.

As the trier of facts the Industrial Commissioner was at liberty to accept the testimony of Dr. Elton J. Saxton that the cause of claimant's condition pre-dated the industrial injury. He was not obligated to accept the testimony of Dr. Davis, claimant, and other as to causation. In a similar case, Marx v. Industrial Commission, 9 Wis.2d 164, 100 N.W.2d 331, the Wisconsin Court said "The rule is well-established that the commission's findings on disputed medical testimony are conclusive. The Industrial Commission had the privilege of relying upon Dr. Jones's testimony that the appellant had an advanced degenerative arthritic condition in his cervical vertebrae, which condition was not due to injury, or accelerated by injury, rather than the testimony given by Drs. Freeman and Braun". See also Ellis v. City of Phoenix et al, 48 Ariz. 95, 59 P.2d 301.

There being substantial credible evidence supporting the findings of the Industrial Commissioner his decision should have been affirmed on appeal. Accordingly, the judgment of the circuit court is reversed with directions to enter judgment affirming the decision of the Industrial Commissioner.

All the Judges concur.